IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HARRIS HOSPICE, INC. a Texas Corporation | § § § § § | |
| Plaintiff, | | |
| VS. | § § | Case No. 4:10cv252 |
| KATHLEEN SEBELIUS, Secretary of United States Department of Health and Human Services | § § § § § | Consolidated with Case No. 4:10cv275 |
| Defendant. | § § | |

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Before the Court are the parties' Motions for Summary Judgment (Dkt. 17 in Case No. 4:10-CV-275; and Dkts. 22 and 33 in Case No. 4:10-CV-252). The two plaintiffs, Heart to Heart Hospice of Tyler Ltd. ("Heart to Heart") and Harris Hospice, Inc. ("Harris"), are approved Medicare providers of hospice care for the terminally ill ("The Providers"). The Defendant is the Secretary of the United States Department of Health and Human Services, Kathleen Sebelius ("HHS").

Harris Hospice and Heart to Heart provide hospice services to eligible Medicare beneficiaries defined as those who have been certified by physicians to have less than a six-month life expectancy. According to the record before the Court, HHS issued a cap repayment demand to Harris for the fiscal year 2008 in the amount of $388,764.00. The cap demand was calculated under 42 C.F.R. § 418.309(b)(1). HHS issued a cap repayment demand to Heart to Heart for the same fiscal year in the amount of $365,513.00. Prior to suit, HHS's appellate division, the Provider Reimbursement

Review Board ("PRRB"), granted an expedited judicial review to both Providers, permitting their challenge to the regulation to be filed in this Court. On May 18, 2010 Plaintiff Harris Hospice, Inc. filed suit in this Court, and on June 2, 2010, Plaintiff Heart to Heart Hospice of Tyler, Ltd. filed suit in this Court. After both suits were filed, the HHS issued a final decision attempting to reverse and vacate the PRRB's prior grant of emergency review.

Shortly thereafter, Plaintiffs in both suits filed motions for summary judgment (Dkt. 22 in 4:10cv252 and Dkt. 17 in 4:10cv275). The Court then conducted a scheduling conference at which time it was determined that the cases should be consolidated for purposes of determining the issues raised by the motions for summary judgment. On October 5, 2010, the Court entered an order consolidating the proceedings in 4:10cv252, the suit filed by Harris Hospice, Inc. and 4:10cv275, the suit filed by Heart to Heart Hospice. The Court then entered a briefing schedule outlining the deadline for the combined response to the Providers' two motions for summary judgment as well as a deadline for Defendant to file her own motion for summary judgment. Defendant Kathleen Sebelius then filed her Cross Motion for Summary Judgment (Dkt. 33) accordingly.

The Court addresses all pending motions in this Report in that the issues are substantially the same.

The Providers seek summary judgment on two primary grounds. First, the Providers argue that the HHS's decision to reverse and vacate the prior grant of emergency review is just plain wrong and unlawful. Second, they argue that the regulation which forms the basis of the recalculation is invalid as contrary to its authorizing statute. *See* 42 U.S.C. § 1395(i)(2)(c).

Title XVIII of the Social Security Amendments of 1965, commonly known as the Medicare Act, established a federally subsidized health insurance program for the aged and disabled. Pub.L.

No. 89-97, 79 Stat. 286 (codified as amended in scattered sections of 42 U.S.C.). In 1982, Congress amended Part A of the Medicare Act to authorize coverage for hospice care. Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, § 122, 96 Stat. 356, 356-63 (codified as amended in scattered sections of 42 U.S.C.). "Hospice care is an approach to treatment that recognizes that the impending death of an individual warrants a change in focus from curative care to palliative care," and the goal of hospice care is to help terminally ill individuals live their remaining days comfortably, in a home setting. 48 Fed. Reg. 56,008, 56008 (Dec. 16, 1983). Items and services covered by the Medicare hospice care benefit include nursing care, physical and occupational therapy, speech language pathology services, medical-social services, homemaker-home health aide services, physicians' services, short-term inpatient care, counseling, medical supplies, and drugs. 42 U.S.C. § 1395x(dd)(1). To be eligible to receive hospice care benefits, an individual must be certified by two physicians as "terminally ill," defined by statute as having a medical prognosis that the individual's life expectancy is six months or less. 42 U.S.C. §§ 1395f(a)(7)(A), 1395x(dd)(3)(A). An eligible individual may elect to receive hospice care benefits for two initial periods lasting ninety days each. 42 U.S.C. § 1395d(d)(1). An individual may extend his or her election of benefits for an unlimited number of subsequent periods lasting sixty days each, provided that he or she is re-certified as "terminally ill" at the beginning of each subsequent period. 42 U.S.C. §§ 1395d(d)(1);1395f(a)(7)(A). Although an individual may receive benefits for an unlimited number of days, the total Medicare reimbursement that any hospice care provider may receive for care it provides to that individual in a given accounting year is limited to a "cap amount." 42 U.S.C. § 1395f(i)(2)(A). There is also an overall Medicare reimbursement cap for all hospice care provided in a given accounting year. The overall cap for a given year is calculated by

3

multiplying the "cap amount" for the year by the "number of medicare beneficiaries in the hospice program in that year. 42 U.S.C. § 1395 (i)(2)(A).

The Secretary argues that, under the standards of deference in *Chevron USA Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842, 104 S. Ct. 2778, 2782, 81 L. Ed.2d 694 (1984), the Secretary's interpretation of the Medicare statute must be upheld so long as it is "within the bounds of reasonable interpretation." *Your Home Visiting Nurse Servs., Inc. v Shalala*, 525 U.S. 449, 450, 119 S. Ct. 930, 932, 142 L. Ed.2d 919 (1999). Moreover, the Secretary urges that the interpretation of her own regulations is entitled to "substantial deference" and " must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 2386, 129 L. Ed.2d 405 (1994) (internal quotation omitted). The Court can grant summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and the moving party is thereby entitled to judgement as a matter of law. FED. R. CIV. P. 56(c).

The first question presented is whether the Board's consideration of an EJR request is a single determination that may not be reviewed on any level by the Secretary. The Providers argue that, once the Board grants an EJR request, this Court is vested with jurisdiction to hear the claim and the Secretary may not usurp that authority by overruling the Board's decision.

Although Defendant has challenged various hospices' standing in other litigation, the Secretary has not argued that these two plaintiffs lack standing. To prove standing to bring a claim in federal court, "a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA,* 549 U.S. 497, 517,

127 S. Ct. 1438, 1441, 167 L. Ed.2d 248 (2007). Following the reasoning of a number of other courts, this Court finds that Plaintiffs have standing to challenge the invalidity of the regulation. *See generally Native Angels Home Care Agency, Inc. v Sebelius*, __ F. Supp. 2d __, 2010 WL 4484562 (E.D. N.C. Oct. 29, 2010).

Realizing that she was losing on most fronts as to the challenged regulation, the Secretary changed her strategy by arguing she had a right to vacate the Board's decision, particularly when the various hospices had not articulated a specific dollar amount by which they had suffered injury as related to the Secretary's interpretation of the challenged regulation. The parties' dispute on this issue centers on the following statutory provision, which governs grants of EJR:

> Providers shall...have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. If a provider of services may obtain a hearing under subsection (a) of this section and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the [Administrator]. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing.

42 U.S.C. § 1395oo(f)(1).

HHS has acknowledged that this provision bars the Administrator from reviewing a determination by the PRRB that a challenge involves a question of law it lacks the authority to

5

resolve ("a no authority determination"). *See* 42 C.F.R. § 405.1875(a)(2)(iii) (providing that "the Administrator may not review the Board's determination in a decision of its authority to decide a legal question relevant to the matter at issue"). Yet, under the HHS's interpretation of the statutory provision, before the PRRB may make a no authority determination, the PRRB must first determine that it has jurisdiction over the provider's challenge. *See* 42 C.F.R. § 405.1842(b)(1) ("The Board ... must find that the Board has jurisdiction over the specific matter at issue before the Board may determine its authority to decide the legal question."); 42 C.F.R. § 405.1842(e)(1) ("If the Board makes a finding that it has jurisdiction to conduct a hearing on a specific matter at issue ... then (and only then) it must consider whether it lacks the authority to decide a legal question relevant to the matter at issue."). This antecedent determination, according to HHS, is not insulated from administrative review by the Administrator. *See id.*; 42 C.F.R. §§ 405.1875(a)(2)(iii) (stating that the Administrator may review "[a] Board EJR decision, but only the question of whether there is Board jurisdiction over a specific matter at issue in the decision"); 42 C.F.R. § 405.1842(g)(1) (providing that the Administrator "may review, on his or her own motion, or at the request of a party, the jurisdictional component only of the Board's EJR decision"). Defendant therefore argues that the Administrator acted within its authority when it vacated the PRRB's EJR determination after concluding that Plaintiffs had not satisfied the amount in controversy requirement (*i.e.*, by at least $10,000).

Did Congress clearly express its intent as to whether the Administrator may vacate an EJR determination on jurisdictional grounds? *See Chevron, U.S.A., Inc. v Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed.2d 694 (1984). If so, the inquiry ends. The Court finds that, by stating unequivocally that judicial review shall be available "whenever," the

PRRB determines that it lacks authority to decide a question of law, the provision indicates that Congress intended for providers like Plaintiffs to have access to the Courts any time the PRRB makes a no authority determination. This is reinforced by the language of the provision itself which goes on to state that once the PRRB determines that it lacks the authority to resolve a question of law implicated by a challenge, such a determination "shall be considered a final decision and not subject to review by the (Administrator)." *See generally National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666, 127 S. Ct. 2518, 2534, 168 L. Ed.2d 467 (2007). This Congressional intent is also reflected in the legislative history of the provision. The House Report that accompanied the enactment of the EJR provision states as follows:

> Title VIII authorizes the Provider Reimbursement Review Board to determine, on its own motion or at the request of a provider of services, whether it has jurisdiction over an issue brought before it by the provider. On the basis of a determination by the Board that it is without authority to decide the question (or if the Board fails to render such a determination within 30 days of the provider's request), *the provider will be permitted to commence a civil action with respect to the matters in controversy without further administrative review.*

Under present law, a provider's dissatisfaction with a particular determination made by its fiscal intermediary on the basis of a regulation issued by the Secretary must first be brought to the Board, even though the Board may not have the authority to reverse or overrule the regulation (the Board has no authority, for example, to rule on the legality of the Secretary's regulations but it must, nonetheless, conduct a full review of the challenge). The effect of this process has been to delay the resolution of controversies for extended periods of time and to require providers to pursue a time-consuming and irrelevant administrative review merely to have the right to bring suit in a U.S. District Court. Title VIII addresses this problem by giving Medicare providers *the right to obtain immediate judicial review in instances where the Board determines that i[t] lacks jurisdiction to*

*grant the relief sought.* H.R. Rep. No. 96-1167, at 394 (1980) (emphasis added). *Affinity Healthcare Sers., Inc. v Sebelius*, __ F.2d __, 2010 WL 4258989 (D. D.C. Oct. 25, 2010). In summary, when the PRRB issued its no authority decision, it implicitly recognized that it had jurisdiction to make the finding and that such is not subject to review by the Administrator based on the clear statutory language of the Act.

Next, the Providers argue that the regulation pursuant to which HHS calculated the repayment amounts conflicts with the governing statute and must be set aside. To implement the statutory cap provision, HHS promulgated a reimbursement regulation governing the calculation of the statutory cap amount. *See* 42 C.F.R. § 418.309. The section provides that the hospice cap amount is calculated using the following procedures:

> (a) The cap amount is $6,500 per year and is adjusted for inflation or deflation for cap years that end after October 1, 1984, by using the percentage change in the medical care expenditure category of the Consumer Price Index (CPI) for urban consumers that is published by the Bureau of Labor Statistics. This adjustment is made using the change in the CPI from March 1984 to the fifth month of the cap year. The cap year runs from November 1 of each year until October 31 of the following year.
>
> (b) Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes--
>
>> (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

> (2) In the case in which a beneficiary has elected to receive care from more than one hospice, each hospice includes in its number of Medicare beneficiaries only that fraction which represents the portion of a patient's total stay in all hospices that was spent in that hospice. (The hospice can obtain this information by contacting the intermediary.)

42 C.F.R. § 418.309.

Several lower courts have found that the challenged regulation impermissibly conflicts with 42 U.S.C. § 1395 (i)(2)( C ), the statutory provision it purports to implement. *See generally Russell-Murrary Hospice, Inc. v. Sebelius*, __ F. Supp. 2d __, 2010 WL 2814411 (D. D.C. July 20, 2010); *IHG Healthcare v. Sebelius*, 717 F. Supp.2d 696 (S.D. Tex. 2010); *Lion Health Serv., Inc. v. Sebelius*, 689 F. Supp. 2d 849 (N.D. Tex. 2010); *Solaris Hospice, Inc. v. Sebelius*, Case No. 4:09-CV- 691 -Y, slip op. (N.D. Tex. May 3, 2010); *Tri-County Hospice, Inc. v. Sebelius*, __ F. Supp.2d __, 2010 WL 784836 (E.D. Okla. Mar. 8, 2010); *Hospice of New Mexico, LLC v. Sebelius*, 691 F. Supp. 2d 1275 (D. N.M. 2010).

Like all the other courts to have addressed the issue, this Court need not go beyond the first step of the *Chevron* analysis. The Medicare statute plainly states that, in determining the "number of beneficiaries," the fiscal intermediary and HHS are required to count every individual who receives care in that fiscal year, with "such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year." 42 U.S.C. § 1395(I)(2)(c). Under the challenged regulation, an individual is counted as a beneficiary only in a single year, depending on when election is made for hospice benefits, regardless of whether the patient receives hospice care in multiple years. *See* 42 C.F.R. § 418.309(b)(1). This runs counter to the statute and thus constitutes an abuse of agency discretion.

The Court therefore finds that the Providers' Motions for Summary Judgment (Dkt.17 in 4:10cv275 and Dkt. 22 in 4:10cv252) should be GRANTED and Defendant's Cross Motion for Summary Judgment (Dkt. 33) should be DENIED, that Plaintiff Providers should have summary judgment against the Defendant, and that the HHS regulation governing calculation of the hospice cap is arbitrary and capricious and in excess of statutory authority. It is recommended that the regulation set forth at 42 C.F.R.§ 418.309(b)(1) be declared unlawful and set aside.

Further, the prior calculations for Heart to Heart and Harris capping liability for fiscal year 2008 should also be set aside.

HHS should be enjoined prospectively from using the current regulation found at 42 C.F.R. § 418.309(b)(1) to calculate the hospice cap for the Providers

The Providers should be awarded costs and may move for consideration of attorney fees to the extent allowable.

HHS should be directed to recalculate the cap in accordance with these findings.

The matter should remanded to HHS for proceedings not inconsistent with the Court's Order and Judgment, and the Court should retain jurisdiction as necessary to consider whether fees can be awarded

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual

findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 5th day of January, 2011.**

                                                DON D. BUSH
                                                UNITED STATES MAGISTRATE JUDGE